UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LEROY ALFONSO BRYAN,<br><br>                 Petitioner,<br>    v.<br><br>ICE FIELD OFFICE DIRECTOR, et al.,<br><br>                 Respondent. | Case No. 2:21-cv-00154-BHS-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for July 2, 2021 |

      Petitioner, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action *pro se*. Petitioner has filed a form petition, and he seeks to obtain release from detention or a bond hearing. Dkt. 5 at 1–7. Petitioner also appears to challenge the merits of his immigration matter and his conditions of confinement in light of the ongoing COVID-19 pandemic; petitioner requests preliminary injunctive relief releasing him from detention and staying his removal. Dkt. 5 at 9–19.

      Currently before the Court is the respondent's return memorandum and motion to dismiss, to which petitioner responded; the respondent replied. Dkts. 8, 11, 12. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the respondent's motion to dismiss be GRANTED,

REPORT AND RECOMMENDATION - 1

petitioner's habeas petition and motion for preliminary injunction be DENIED, and this action be DISMISSED with prejudice.

## BACKGROUND

Petitioner is a native and citizen of Jamaica who unlawfully entered the United States at an unknown location on an unknown date after a previous voluntary departure in 1978. Dkt. 10 at 2–3. In 1986, Petitioner was using an alias (Frederick Kirk Jost) and was convicted of sale or transportation of a controlled substance in California, for which he was sentenced to two years. *Id*. at 2. In 1990, Petitioner was convicted of second degree murder (with a firearm enhancement) under the same alias, and was sentenced to 17 years to life. *Id*. at 3. After serving approximately 30 years, Petitioner was released from prison and on October 10, 2019, ICE took him into custody pending issuance of a Notice to Appear ("NTA"); he has remained in ICE custody since that time. *Id*.

On October 16, 2019, ICE served Petitioner with an NTA charging him with inadmissibility pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. §1182(a)(6)(A)(i), because he was a non-citizen who was not admitted or paroled into the United States. Dkt. 9-5. Petitioner was placed in removal proceedings and applied for relief from removal, including asylum. Dkt. 10 at 4. On January 27, 2020, an immigration judge ("IJ") denied petitioner's applications for relief and ordered him removed to Jamaica. Dkt. 9-6. Petitioner appealed to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on July 2, 2020. Dkt. 9-7.

On July 16, 2020, Petitioner filed a petition for review with the Ninth Circuit Court of Appeals and sought a stay of removal pending review. Dkt. 10 at 4. The Ninth Circuit on January 14, 2021 denied plaintiff's motion for a stay of removal and terminated the

temporary stay. *Id.*; Dkt. 5 at 22–23; *Bryan v. Garland*, No. 20-72082, Dkt. 19 (9th Cir. Jan. 14, 2021). Petitioner's petition for review remains pending.

Petitioner appeared *pro se* for a bond redetermination hearing before an IJ on October 31, 2019 but withdrew his request for bond. Dkt. 10 at 3. The record does not reflect that Petitioner has had any other bond hearings. However, he has twice received custody redeterminations pursuant to the class action order in *Fraihat v. ICE,* 445 F.Supp.3d 751 (C.D. Cal. Apr. 20, 2020), as a detainee identified as potentially at higher risk for serious illness due to COVID-19. Dkt. 10 at 4–5. In both instances—on January 29, 2021 and on March 10, 2021—ICE determined that Petitioner's serious criminal history posed a threat to public safety and that continued detention was appropriate. *Id*. Plaintiff has since been fully vaccinated against COVID-19. *Id.*

## DISCUSSION

**A.    Petitioner's Detention is Authorized**

1.    <u>Statutory Authority</u>

The form petition filed by Petitioner asserts that his detention is governed by 8 U.S.C. § 1226(a). Dkt. 5 at 3. The respondent disagrees, asserting that the governing statute is 8 U.S.C. § 1231. Dkt. 8 at 2–4.

The respondent correctly identifies Title 8 U.S.C. § 1231 as the applicable authority for the detention and release of noncitizens like Petitioner who have been ordered removed. Under § 1231(a), DHS[1] is required to detain a noncitizen during the

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

90-day "removal period." 8 U.S.C. §§ 1231(a)(2), (a)(1)(B). The removal period begins on the latest of the following:

    (i) The date the order of removal becomes administratively final.

    (ii) *If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.*

    (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added).

Here, the Ninth Circuit denied Petitioner's motion for a stay of removal on January 14, 2021. Dkt. 5 at 22–23. As a result, the statutory basis for Petitioner's detention shifted on that date to 8 U.S.C. § 1231. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008) ("when an alien files a petition for review of his removal order and we *decline* to grant a stay of removal . . . the removal period commences immediately") (emphasis in original).

    2.    <u>Petitioner's Detention is Statutorily Authorized and Comports with Due Process</u>

Detention is mandated during the removal period. 8 U.S.C. §1231(a)(2). Here, the 90-day removal period began on January 14, 2021, when the Ninth Circuit adjudicated and denied Petitioner's motion for a stay of removal. *See* 8 U.S.C. § 1231(a)(2)(B)(ii). The removal period ended 90 days later, on April 14, 2021. After the 90-day period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including those who are inadmissible under § 1182. 8 U.S.C. § 1231(a)(6). Because the IJ found Petitioner inadmissible under § 1182 (Dkts. 9-5, 9-6), Petitioner's detention is statutorily authorized.

REPORT AND RECOMMENDATION - 4

Although § 1231(a)(6) authorizes ICE to detain petitioner, it cannot do so indefinitely. In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States and does not permit "indefinite" detention. 533 U.S. 678, 701 (2001). The Supreme Court also determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.*

After the six months, if the noncitizen provides good reason to support an assessment that there is "no significant likelihood of removal in the reasonably foreseeable future", the respondent is required to come forth with evidence sufficient to rebut the noncitizen's showing. *Id.* If the respondent fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Nevertheless, courts must remember that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

Here, the 90-day period has expired but the six-month presumptively reasonable period does not expire until July 14, 2021. Further, there is no evidence in the record indicating that "there is no significant likelihood of removal." *Zadvydas*, 533 U.S. at 701. Detention only becomes indefinite if, for example, the country designated in the removal order refuses to accept the noncitizen, or if removal is barred by the laws of this country.

REPORT AND RECOMMENDATION - 5

*See Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1233 (9th Cir. 2008). There is no evidence ICE will not be able to remove Petitioner, or that Jamaica refuses to accept petitioner. Instead, the respondent has submitted evidence that removal is reasonably foreseeable. Dkt. 10 at 5–6.

Respondent states that ICE is in the process of obtaining a travel document for petitioner; it has submitted information to the Jamaican Embassy evidencing petitioner's citizenship and expects that a travel document will be issued by the Jamaican government. *Id*. Petitioner's removal will be executed upon such issuance. *Id.* Because petitioner's removal is not indefinite, he is not entitled to release. The Court therefore recommends that the petitions' request for release on due process grounds be denied.

    3.    <u>Petitioner is not Entitled to a Bond Hearing</u>

Petitioner also requests a bond hearing. Dkt. 5 at 3. The Ninth Circuit has held that noncitizens subject to prolonged detention under § 1231(a)(6) are entitled to a bond hearing if removal is not imminent. *Diouf v. Napolitano*, 634 F.3d 1081, 1082 (9th Cir. 2011) ("*Diouf II*"); *see also Aleman Gonzalez v. Barr*, 955 F.3d 762, 765–66 (9th Cir. 2020) (reaffirming *Diouf II*'s holding).

In *Diouf II*, the Ninth Circuit held that "an individual facing prolonged immigration detention under 8 U.S.C. § 1231(a)(6) is entitled to release on bond unless the government establishes that he is a flight risk or a danger to the community." 634 F.3d at 1082. The court emphasized that the "focus . . . is upon *prolonged* detention," as the term is used in *Zadvydas*. *Id*. at 1091 (emphasis in original).

Specifically, the court held that the government must provide a bond hearing "when detention crosses the six-month threshold and release or removal is *not imminent*." *Id*. at 1091–92 (emphasis added); *see also id.*, at 1092 n.13 ("As a general

matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months.") Thus, under *Diouf II*, the petitioner would have a case for a bond hearing only after detention becomes prolonged and where release is not imminent.

Here, as discussed above, Petitioner's post-removal period detention is not prolonged; Petitioner's detention is still within the presumptively reasonable six-month period. *Zadvydas*, 533 U.S. at 701. Furthermore, there is no evidence that Petitioner's removal is not imminent; the respondent is in the process of obtaining a travel document, and there is no basis to expect that the document will not be issued. Dkt. 10 at 5–6. The evidence demonstrates that Petitioner's removal is likely to occur in the reasonably foreseeable future. Accordingly, the Court recommends that Petitioner's request for a bond hearing be denied.

### B. Conditions of Confinement

Petitioner also argues that he should be released from detention because his conditions of confinement place him at risk of serious illness due to COVID-19, and those conditions amount to punishment. Dkt. 5 at 11–15. The Court concludes that Petitioner has failed to present evidence to establish either claim.[2]

---

[2] The Ninth Circuit has not definitively settled whether a Federal detainee's conditions of confinement claim is cognizable in a habeas petition relating to immigration detention. *See Nettles v. Grounds*, 830 F.3d 922, 930-931 (9th Cir. 2016) (for a state court petitioner, in state prison custody after being convicted under state law, 42 U.S.C. Section 1983 is the exclusive vehicle for bringing a cause of action that is "not within the core of habeas corpus") . The majority of other circuits have held that it is. *See, e.g. Aamer v. Obama*, 742 F.3d 1023, 1036–37 (D.C. Cir. 2014) (collecting cases). Another court in this District proceeded to analyze a similar conditions of confinement claim in a Section 2241 proceeding, in light of the Ninth Circuit's recent transfer of several emergency conditions of confinement motions to this District as habeas matters. *Dawson v. Asher*, No. C20-0409JLR-MAT, 2020 WL 1704324, at *9 (W.D. Wash. Apr. 8, 2020).

### 1. Right to Reasonably Safe Conditions

Petitioner's claims arise out of his substantive due process rights under the Fifth Amendment.[3] "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). The government thus violates the Due Process Clause if it fails to provide civil detainees with "food, clothing, shelter, medical care, and reasonable safety." *Id.* at 200. To establish such a claim, Petitioner must show:

> (i) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (ii) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (iii) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (iv) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071; *see also Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020) (addressing reasonable safety claim raised by immigration detainees during the COVID-19 pandemic).

With respect to the third element, the Government's conduct must be "objectively

---

[3] Petitioner also invokes the Eighth Amendment, but as a Federal civil detainee, his claims are governed by the more liberal standard of the Fifth Amendment rather than the more onerous Eighth Amendment standard applied to convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc).

REPORT AND RECOMMENDATION - 8

1  unreasonable, a test that will necessarily 'turn on the facts and circumstances of each
2  particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S.
3  389, 397 (2015)) (alterations and internal quotation marks omitted). Objective
4  unreasonableness requires "more than negligence but less than subjective intent—
5  something akin to reckless disregard." *Castro*, 833 F.3d at 1071 (quoted source
6  omitted). "To satisfy the fourth element, a plaintiff need only prove a 'sufficiently
7  imminent danger[],' because a 'remedy for unsafe conditions need not await a tragic
8  event.'" *Roman*, 2020 WL 6040125, at *6 (quoting *Helling v. McKinney*, 509 U.S. 25,
9  33–34 (1993)).

10     Petitioner contends that the Government has subjected him to conditions of
11  confinement that increase his risk of infection with COVID-19.

12     Petitioner has not established that in the event of exposure to COVID-19, he
13  would be endangered. He asserts that he is 69 years old and suffers from medical
14  conditions placing him at risk (Dkt. 1 at 11, Dkt. 11 at 12), and the Government has
15  identified him as potentially subject to COVID risk factors (Dkt. 10 at 4–5). Yet -- since
16  the time Petitioner filed his petition, he has been fully vaccinated. Dkt. 10 at 5. *See*
17  *Washington v. Warden of USP-Canaan*, No. 1:21-CV-211, 2021 WL 1123330, at *6
18  (M.D. Pa. Mar. 24, 2021) (rejecting claim of unsafe conditions of confinement, due in
19  part to vaccination of inmates and staff); *United States v. Kosic*, No. 18 CR. 30(PAC),
20  2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (collecting cases finding that
21  vaccination sufficiently mitigates risk such that an inmate's health conditions no longer
22  present extraordinary and compelling reasons for compassionate release). The record

shows the respondent has taken reasonable available measures to abate the risk of COVID-19.

The Court concludes petitioner has not met his burden of establishing that he faces a substantial risk of serious harm due to the current conditions of his detention and that respondent has failed to take reasonable measures to abate any such risk. Accordingly, the Court recommends that petitioner's Fifth Amendment conditions of confinement claim be dismissed.

2. <u>Conditions Amounting to Punishment</u>

Petitioner also argues that his confinement amounts to unconstitutional punishment. Dkt. 1 at 12.

To evaluate the constitutionality of a pretrial detention condition under the Fifth Amendment, a district court must determine whether those conditions "amount to punishment of the detainee." *Bell*, 441 U.S. at 535; *see also Kingsley*, 576 U.S. at 398 (2015). Punishment may be shown through an express intent to punish or a restriction or condition that "is not reasonably related to a legitimate governmental objective." *Bell*, 441 U.S. at 539; *see also Kingsley*, 576 U.S. at 398 (clarifying that "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose").

The Supreme Court has recognized a legitimate government interest in ensuring noncitizens appear for their removal or deportation proceedings and protecting the community from harm. *See Jennings v. Rodriguez*, __ U.S. __, 138 S. Ct. 830, 836-838 (2018); *Demore v. Kim*, 538 U.S. 510, 520–22 (2003); *Zadvydas*, 533 U.S. at 690–91.

REPORT AND RECOMMENDATION - 10

As discussed above, the Court cannot conclude the current conditions of Petitioner's detention place him at substantial risk of serious harm. Accordingly, the Court concludes petitioner has failed to present "objective evidence the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398. Thus, Petitioner has not established a Fifth Amendment violation and this claim should be dismissed.

### C. Petitioner's Family Unity Program Argument is Inapplicable

Petitioner's response invokes the Family Unity Program. Dkt. 11 at 2–5. This is a frivolous argument because the provision has no application to Petitioner.

The Family Unity Program applies to a "spouse or unmarried child of a legalized [noncitizen]." Immigration Act of 1990, PL 101–649, November 29, 1990, 104 Stat 4978 (codified as a note to 8 U.S.C. §1255a); *see Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1009 (9th Cir. 2006), *overruled on other grounds, Medina-Nunez v. Lynch*, 788 F.3d 1103, 1105 (9th Cir. 2015) ("The [Family Unity Program] permits qualified alien spouses or unmarried children of legalized aliens, who entered the United States before 1988 and have continuously resided in the United States since that time, to apply for the benefits of the program, which include protection from deportation and authorization to work in the United States").

Petitioner provides no evidence that he has any family member who is a temporary or permanent resident of the United States. Instead, the record demonstrates that Petitioner's parents are both natives and citizens of Jamaica, that he is not married and that he does not have any United States citizen minor children. Dkt. 9-1 at 5. Petitioner has no valid claim under the Family Unity Program.

### D.      Stay of Removal

Petitioner's handwritten attachment to his petition also seeks a stay of his removal. Dkt. 1 at 19. Petitioner's apparent ground for this request is his argument that the IJ erred in deciding the merits in his removal proceeding. Dkt. 1 at 9–11.

But this Court lacks jurisdiction to review the merits of Petitioner's removal order. In the REAL ID Act of 2005, Congress amended the Immigration and Nationality Act to "expressly eliminate[] habeas review over all final orders of removal . . . ." *A. Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007). It provided that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal 8 U.S.C. § 1252(a)(5); *see Martinez-Rosas v. Gonzales*, 424 F.3d 926, 929 (9th Cir. 2005) (under REAL ID Act, a petition for review in the court of appeals "is now the exclusive means for challenging final removal orders by the [Board of Immigration Appeals ("BIA")] . . ..").

The REAL ID Act, however, was "not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'" *V. Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) (quoting H.R. Rep. No. 109-72 at 175). Accordingly, as a general rule, noncitizens "may continue to bring collateral legal challenges to the Attorney General's detention authority . . . through a petition for habeas corpus." *Id.* (quoting *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 946 (9th Cir. 2008)). But while the courts must be careful "not to unduly circumscribe their habeas jurisdiction," they "must also avoid the opposite pitfall, and recognize the lack of jurisdiction where a habeas petition 'directly implicate[s] the order of removal.' *V. Singh*, 639 F.3d at 1211 (quoting *Nnadika v. Att'y Gen. of U.S.,* 484 F.3d 626, 632 (3d Cir. 2007).

REPORT AND RECOMMENDATION - 12

Here, Petitioner's request for a stay of removal does not bring a collateral challenge to his detention but instead directly challenges the IJ's removal order. Dkt. 1 at 9–11 (arguing IJ violated Petitioner's due process rights and erred in finding Petitioner was not eligible for asylum). Petitioner may not bring such a challenge in this Court; instead, judicial review is only available from the Ninth Circuit—where Petitioner has a pending petition for review and where his request for a stay of removal has been denied. Dkt. 10 at 4; Dkt. 5 at 22–23.

Even if Petitioner's request is instead interpreted as brought under habeas to seek a stay of removal while Petitioner's petition for review is adjudicated, the Court nonetheless lacks jurisdiction pursuant to 8 U.S.C. § 1252(g).

Section 1252(g) strips courts of "jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* . . . ." 8 U.S.C. § 1252(g) (emphasis added). The Supreme Court has interpreted this provision narrowly and declined to hold that it "sweep[s] in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, __ U.S. __, 138 S. Ct. 830, 841 (2018) (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, (1999) ("*AADC*")). Instead, the Supreme Court has "read the language to refer to just those three specific actions themselves." *Id.* (citing *AADC*, 525 U.S. at 482–83).

The Ninth Circuit has added that § 1252(g) precludes consideration of "not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding." *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002)

(emphases in original). Nevertheless, courts still have jurisdiction over "many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *AADC*, 525 U.S. at 482.

Thus, the mere fact a habeas petitioner is seeking a stay of removal is not dispositive of whether the Court has jurisdiction. The Court must instead look beyond the request for a stay to the underlying claim and dismiss for lack of jurisdiction where the claim arises from the decision or action to execute a removal order.

Here, as discussed above, Petitioner does not seek a stay to bring claims that are independent of his removal order; instead, he seeks a stay of removal while he pursues his petition for review of his removal order in the Ninth Circuit. Dkt. 1 at 19. Petitioner's request that this Court stay the execution of his final order of removal while he seeks additional remedies directly challenges the Government's ability to "execute" his removal order. Thus, under the plain meaning of § 1252(g), the Court lacks jurisdiction over petitioner's claims. *See Diaz-Amezcua v. Barr*, 402 F. Supp. 3d 963, 965–66 (W.D. Wash. 2019) (request for stay pending petitioner's pursuit of a motion to reopen his removal proceedings is barred by the plain language of §1252(g)); *Xiaoyuan Ma v. Holder*, 860 F. Supp. 2d 1048, 1059 (N.D. Cal. 2012) (holding that § 1252(g) bars habeas jurisdiction to stay deportation during the BIA's adjudication of petitioner's motion to reopen). The Court should hold that it lacks jurisdiction to consider Petitioner's request for a stay of his removal.

### E. Motion for Preliminary Injunction

The Petition includes a request for a Temporary Restraining order, which the Court has construed as a motion for preliminary injunction. Dkt. 1 at 18–19; Dkt. 7 at 2. Because the Court recommends that the petition be dismissed, the Court also recommends that Petitioner's motion for preliminary injunction be denied as moot.

### CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court GRANT respondents' motion to dismiss; the Court recommends the petition for writ of habeas corpus be DISMISSED with prejudice and that Petitioner's motion for preliminary injunction be DENIED as moot.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **July 2, 2021**, as noted in the caption.

Dated this 14th day of June, 2021.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15